[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
CT Page 7508
A father of two boys, ages 12 and 15, files for divorce and weeks later moves out of the marital residence. Since that time almost a year ago, the 12-year old has refused to have a relationship with the father who alleges that the mother intentionally alienated the son against him. In the protracted process that followed the filing, the financial situation of this dysfunctional family dramatically deteriorated. Such is the stuff of contested matrimonial litigation.
On October 23, 1983, seventeen years ago, the parties married in the State of Florida — it was the second marriage for both. The complaint in the instant action, filed by the Husband on July 17, 2000, claimed a dissolution of marriage, joint legal and physical custody, an equitable division of the party's property both real and personal, an equitable apportionment of the parties joint and separate liabilities, and other relief. On July 21, 2000, the Wife filed her own complaint claiming a dissolution of marriage, a fair division of assets and debts, alimony, child support, joint legal custody with primary residence to her. In her proposed orders she asked for sole legal custody. An attorney for the minor children was appointed by the court on September 5, 2000 which appointment was changed to that of Guardian ad Litem on March 13, 2001. After numerous status conferences, motions, restraining orders, arrests and court hearings, the parties were fully heard on all issues over five days of trial.
The Husband is 43 years of age, in good health, and has a bachelor's degree in communications from American University. Within the past year, he did have need to see a therapist on several occasions for problems arising out of the breakdown of the marriage, but was not prescribed any medication. During the marriage he worked for several corporations in managerial positions including the Ryder Systems Corporation in Florida, the Wyatt Company in Minnesota, and the Ashland Oil Corporation in Kentucky. In between Wyatt and Ashland he returned to Florida to run a bicycle business. Said business, purchased with more than one hundred thousand dollars borrowed from his father, was unsuccessful, very stressful on him, on the marriage, and ultimately failed. Currently, he is employed by an international corporation, ABB, Inc. headquartered in Connecticut, as manager of corporate communications with a base income of $98,481.84. Depending upon company performance in the United States, he is entitled to receive a bonus, which in 2001 amounted to $17,648.55. While there is no reason to doubt that his income, including a bonus, will continue to increase in the future, the court does not find him to have a current income capacity, as alleged by the Wife, to be $150,000.00. CT Page 7509
The Wife is 43 years of age, in reasonably good health, and has an associates degree from a Florida community college. As a result of problems arising out of the breakdown of the marriage, she consulted a psychiatrist for depression and is currently taking prozac as prescribed. She testified that she is experiencing some side effects from the medication and needs to see a physician about it. During the marriage, by agreement between the parties, she was essentially a homemaker. She did work full time before the children were born and during a period in the early 90's when the Husband experienced some financial setbacks in the bicycle business. No income capacity is assigned to her at this time, but it is clear to the court that she is capable, intelligent, and needs to be working full time in the near future if she is to be economically viable. Once the dissolution of marriage is behind her, she should be back in the job market. At that time, any periodic orders entered herein should be subject to review.
Two children, issue of the marriage, were born to the Wife, to wit: Gregory Lee born November 23, 1985, and Alec Nathanial born February 15, 1989. Gregory, a sophomore in high school, is in good health, very intelligent, well adjusted, and enjoys a good relationship with both parents. On the other hand, Alec, a sixth grade student, while also in good physical health and very bright, is not so well adjusted. He has had counseling for emotional problems by the school counselor, also by Dr. Robert Horowitz of New Haven, and currently by Dr. Harry Adamakos of Fairfield. Dr. Horowitz testified that Alec will need "intensive psychological input for major unresolved problems." Since the filing of the divorce action, Alec's relationship with his father has steadily deteriorated to the point where there is no relationship today. Sadly, he takes perverse delight in being involved in his parents' divorce battle, siding with the mother as her protector, without any comprehension of the long term consequences of what he is doing.
The Husband testified, which was confirmed by Dr. Horowitz, that prior to the divorce action he enjoyed a good relationship with his son in every way. He alleges that the Wife alienated the child against him. While the Husband certainly bears some responsibility for the dilemma, the court believes that the main responsibility rests with the Wife who, at the very least inadvertently, or at worst intentionally, sent the son the wrong messages about his father. In the process, the child was led to believe that his mother needs his support and loyalty. Further, the Wife showed very poor judgment in introducing a newly found boyfriend to the children, including inviting him to the home for late night visits on several occasions, at the very time custody issues were being contested in court.
Dr. Horowitz describes Alec as "entangled in his parents divorce" and CT Page 7510 in need of rebuilding his relationship with his father which he is very capable of doing. It is clear to the court, that the sooner this is accomplished, with professional help and hopefully the cooperation of both parents, the better off Alec will be. He has already engaged in self destructive, endangering, antisocial behavior, which would only worsen if not immediately addressed. Alec needs to get a very clear message from both parents that the battle is over and it is time to get back to being a boy once again.
Neither party had any assets of significance which they brought to the marriage. In fact, the significant current assets of the parties are very simply stated, a residence and some retirement benefits. Each also has a motor vehicle of modest value and bank accounts with little accumulation. For some murky reason, the parties spent an inordinate amount of trial time and financial cost, trying to establish the value of the residence. The appraisals were only $25,000.00 apart. The court finds the fair market value to be $325,000.00 with a mortgage balance of $225,000.00 leaving an equity of $100,000.00. The Husband's 401k plan has a gross value of $14,333.27, excluding a $7,000.00 loan which the Husband took out, while the automatic orders were in place, without the knowledge of the Wife, to help pay his legal fees. The Husband also has two pension plans, one with Ryder System Corporation which entitles him to $273.62 per month at age 65, and the other with ABB, Inc. which has an accrued benefit of $815.39 per month at age 65. Because the amount of the latter pension is not vested, it has zero value today, but may have some value if it vests five years from the date of employment as the plan specifies.
The total liabilities of the parties are found to be as follows:
Irwin Opperman 20,100.00 B. R. Simon 10,000.00 L. McGlynn 15,000.00 401k loan 7,000.00 Dr. Horowitz 2,955.00 Dr. Horowitz 450.00 John Mager 13,540.00 Hoffman Oil 705.00 SNET 83.00 Protect (alarm) 254.50 Cutting Edge 291.50 St. Vincents 115.00 Merrit Ortho 137.92 Dr. Ningrone 70.00 Dr. Lutzker 200.00 Dr. Natkin 1,122.00 Dr. Pomeraniecz 60.00 CT Page 7511 Dr. Israel 525.00 Carol Pulice 720.00 Dr. Russo 200.00 J.P. Auto 501.36 Firstar MC 1,538.00 Firstcard Visa 2,325.00 ATT Mastercard 1,600.00 Filenes 200.00 Bess Evangelos 1,675.00 Pers. Loans (Wife) 14,650.00 Universal Card $2,400.00 World Gym 299.00 Total 98,717.28
Most of the liabilities, more than $72,000.00, were incurred for counsel fees and other costs directly associated with the instant litigation, some were court ordered payments which the Husband was unable to make because of cash flow problems, and the remainder were charge cards and medical bills customarily found on financial affidavits for middle income American families. The Husband proposes that the marital residence be listed for sale and the net proceeds used to reduce this staggering debt. Unrealistically, the Wife proposes that the debt be the sole responsibility of the Husband and the residence be deeded to her. The court has crafted a more middle ground approach.
It would serve no useful purpose to chronicle the causes for the breakdown of this marriage which is clearly irretrievable. It appeared to be dysfunctional for several years, perhaps as early as 1991. The Husband claimed that the Wife spent money foolishly, was unsympathetic to his needs, withdrew from a physical relationship, did not participate in functions with his family, and repeatedly refused his entreaties to attend marriage counseling. He conveniently minimized, as a cause, his admitted affaire with a co-employee which commenced in 1997. The Wife denied the Husband's claims and disingenuously insisted the sole cause for the breakdown was the Husband's affaire. She claimed that after the affaire commenced, the Husband became cold to her, stayed out late, and refused to participate in family functions.
While there are two sides to every marriage breakdown, and perceptions always vary, there appears to be enough blame in this case to be shouldered by both parties. On the other hand, it is clear that the Wife bears more responsibility for the estrangement of Alec from his father. She could have done more in the past and needs to do more in the future to help ameliorate the matter.
The court finds that residence requirements have been satisfied and CT Page 7512 neither party has been the recipient of public assistance. All pertinent criteria outlined in Chapter 815j of the General Statutes were considered by the court in the entry of the following orders.
 ORDERS
DISSOLUTION OF MARRIAGE
The marriage is dissolved on the grounds of an irretrievable breakdown.
CUSTODY AND VISITATION
1. The parties shall share joint legal custody of the minor children issue of the marriage, to wit: Gregory Lee Opperman, born November 23, 1985, and Alec Nathanial Opperman, born February 15, 1989. The parties shall have joint custody of the minor child Gregory. The Wife shall have physical custody of the minor child, Alec. The parties shall share parenting time with the children as set forth below.
2. The Husband and Wife shall confer with reference to matters of policy involving the children, as to topics such as health and medical care, religion, education, camps and activities, and the parties shall attempt to adopt a harmonious policy best suited to the interests of the children. Routine "day to day" decisions shall be made by each parent during the times when the children are with him or her.
3. All major decisions affecting a child shall be made by the parties jointly, with each parent to have an equal voice in such decisions. In addition, the parties shall confer whenever differences arise or decisions are to be made or changes brought about affecting the children's lives with respect to such non-routine matters as their education, financial matters, religious training, illness and operations, and other matters of similar importance. Each party shall have an equal voice in making a decision on such matters.
4. In the event the parties are unable to reach a joint agreement as to a major decision affecting a child, neither party shall be entitled to take a unilateral action. The parties shall refer any such disagreement to a mutually agreed upon counselor or, if they cannot agree, to the Superior Court Family Services Unit for mediation.
5. Each of the parties shall furnish to the other copies of any reports from third persons concerning the health, education or welfare of the children, including but not limited to, school report cards, transcripts, standardized test results and medical records. CT Page 7513
6. The parties shall exert reasonable effort to maintain free access and unhampered contact between the children and each of the parties and to foster a feeling of affection between the children and the parties. Neither party shall make any comment that tends to denigrate the other parent to or in the presence or hearing of either of the minor children. Neither party shall do anything that may estrange the children from the other party nor injure the opinions of the children as to the other parent, nor act in such a way as to hamper the free and natural development of each child's love and respect for the other parent.
7. Each of the parties shall keep the other informed as to the whereabouts of the children, including his/her/their address and telephone number, while said children are with the Husband or the Wife. Each party will, similarly, notify the other of the location, phone number and names of supervisory adults where any child will be staying in the event the child is spending the night away from the residence of either parent.
8. If either party has knowledge of any illness or accident or other circumstance seriously affecting the health or welfare of the children, that party will promptly notify the other. Each party will, similarly, notify the other of any other change in the child's medical status, "including visits to any doctor or dentist or prescription medications.
9. In the event of illness or personal injury to any child, the first party to learn of such illness or injury shall notify the other immediately and each party shall keep the other informed at all times of the whereabouts of said child or children. For the purposes of this order, the word "illness" shall mean any sickness or ailment that requires the services of a physician. The word "injury" shall mean any injury that requires the services of a physician.
PARENTING SCHEDULE
1. Commencing on the first Monday following the entry of the court's orders, the minor child, Gregory, shall be with each parent in accordance with the following schedule that shall repeat itself every two weeks:
Week #1
Monday and Tuesday: with Husband after school or after work;
Wednesday, Thursday and Friday: with Wife;
Saturday and Sunday: with Husband after school or after work; CT Page 7514
Week #2
Monday and Tuesday: with Wife;
Wednesday, Thursday and Friday: with Husband after school or after work; and
Saturday and Sunday: with Wife after school or after work.
If Gregory is not in school and the Husband is not working, Gregory shall be with the Husband for the entire day during the Husband's regularly scheduling parenting time.
Each parent shall be responsible for transporting Gregory to and from his activities while he is in his or her care and custody. Provided both parties continue to reside within the Towns of Shelton, Derby, Seymour or Ansonia, each parent shall be responsible for picking up Gregory at the other's residence for his or her parenting time unless other arrangements are agreed upon by both parties.
2. With the goal being that the parenting time between Alec and the Husband eventually equate to the liberal, reasonable and flexible parenting time that the Husband has with Gregory, the following temporary
orders shall enter with regards to Alec:
 a. The Husband shall have parenting time with Alec to initially consist of one-hour therapeutic meetings with Alec's counselor, Harry Adamakos, Ph.D., on a schedule set forth by Dr. Adamakos; and a weekly two-hour unsupervised meeting in a neutral setting.
 The Husband shall pick up Alec at the marital residence or school for the two-hour weekly meeting. In the event Alec refuses to get in the car for his time with the Husband, the Wife shall provide transportation to the neutral setting. The Wife must leave the neutral setting after dropping off Alec and may not return until the two-hour meeting is completed.
 b. Both parties will actively participate in all counseling as may be suggested by Dr. Adamakos now or at any time in the future. Both parties will, to the best of their ability, carry out all recommendations made by Dr. Adamakos.
c. The parties shall return to court on August 28, 2001 in order to determine any appropriate change in the temporary visitation schedule for Alec. CT Page 7515
 d. The guardian ad litem is to obtain a report from Dr. Adamakos concerning his recommendation regarding parenting time with Alec.
 e. The parties shall authorize Dr. Adamakos to report to the guardian ad litem if Alec does not attend any scheduled counseling sessions or if any other issues arise that require the immediate attention of the court. In any event, the court shall retain jurisdiction over the issue of parenting time as it pertains to the minor child, Alec, so as to enter any further orders as may be appropriate including any orders concerning counseling for the parties and the minor children, and to insure the implementation and compliance with the court's orders regarding the minor child, Alec.
3. Holidays shall be allocated between the parties as follows (holidays with Alec shall await the report of Dr. Adamakos):
 a. Thanksgiving: The Thanksgiving holiday shall be alternated from year to year commencing in 2001 with the Wife. This holiday period shall be defined as the Saturday before Thanksgiving until the Saturday following Thanksgiving for the purpose of either party traveling outside the area for the holiday with the child or children. If no holiday travel is involved, the holiday period shall be defined as Thanksgiving Day only.
 b. Easter Day and Christmas Day: Every Easter Day and Christmas Day shall be spent with the Wife.
 c. Hanukkah, Rosh Hashanah and Passover: The first two nights of every Hanukkah, Rosh Hashanah and Passover shall be spent with the Husband.
 d. Memorial Day: Memorial Day shall be alternated from year to year commencing in 2001 with the Husband.
 e. Fourth of July: The Fourth of July shall be alternated from year to year commencing 2001 with the Wife.
 f. Labor Day: Labor Day shall be alternated from year to year commencing 2001 with the Husband.
 g. New Year's Day: New Year's Day shall be alternated from year to year commencing 2001 with the Wife.
4. Each party may take up to two weeks vacation with the minor children. Each parent may also take an additional non-consecutive seven (7) days throughout the calendar year with the minor children for the CT Page 7516 purposes of travel or long weekends. Each parent will provide the other parent with timely notice of when he/she intends to exercise vacation with the children, as well as provide all necessary information regarding the children's itinerary.
5. The children shall spend Father's Day with the Husband and Mother's Day with the Wife.
6. Each child will spend his birthday with the parent who regularly has that child on the relevant day, in accordance with the routine parenting plan. However, both parents will discuss with each other any plans for the children's birthday parties. On each child's birthday, allowance will be made for the parent with whom the child is not residing on that day to visit or telephone and exchange good wishes and/or gifts.
7. In the event of a conflict between the routine weekly schedule and the holiday and vacation schedules, the holiday and vacation schedule shall control.
8. The parties shall have reasonable access to the children while they are with the other party, including free access by mail, free access by electronic mail and free access by telephone during reasonable hours of the day and evening. Each party shall also have telephone contact with the child or children not in their physical custody every evening between the hours of 9:30 p.m. and 10:30 p.m., except on a school night in which case telephone contact shall be made no later than 10:00 p.m.
9. Should either party require the services of a child care provider during the time that either or both of the children are in their physical custody, they shall contact the other parent to determine if they are available to care for the children prior to contacting a third party.
The parties are ordered to immediately undertake communications counseling, with a therapist to be mutually agreed upon, on a biweekly basis, for the purpose of improving their communications skills as they relate to the rearing of their minor children. In the event they are unable to agree upon a therapist, they are to consult with Dr. Harry Adamakos, who shall not be disqualified, concerning an appropriate therapist. In the event they are still unable to agree upon a therapist, the Guardian ad Litem shall make the selection. The cost of the service provided, after deduction of any insurance payments, is to be equally shared. A report on their attendance and cooperation shall be forwarded to the Family Services Unit one week prior to August 28, 2001 and shall be available to the parties and their counsel. The Family Services Unit shall supervise this issue until the next court date and shall furnish the court with a copy of the report on August 28, 2001. CT Page 7517
CHILD SUPPORT
The Husband shall pay to the Wife total child support for the minor children in the amount of $310.00 per week (guidelines presumptive amount is $361.00) pursuant to an immediate wage withholding order. This order recognizes the joint custody arrangement and the shared parenting time regarding the child Gregory.
LIFE INSURANCE
The Husband shall name the Wife beneficiary on the Sentry life insurance policy insuring his life, in the amount of $100,000.00, until he no longer has any financial obligation to her for the payment of alimony. He may use the cash surrender value on said policy, at his option, to pay the premiums but is not to otherwise encumber the policy.
The Husband shall name the minor children equal beneficiaries on his group life insurance policy at his place of employment.
He shall furnish to the Wife, upon reasonable request, satisfactory evidence that all insurance is being properly maintained. The provisions of this section shall be subject to modification.
MEDICAL INSURANCE
The Husband shall continue to maintain the medical and dental insurance coverage he now has available to him through his place of employment for the benefit of the minor children. All un-reimbursed medical and dental expenses incurred by the minor children shall be equally shared. Neither party will incur any extraordinary expenses without first consulting with the other except in case of emergencies. The provisions of Conn. Gen. Stat. Sec. 46b-84e shall apply. The provisions of this paragraph shall be subject to modification.
The Wife may avail herself of the COBRA benefits provided by the Husband's employer at her sole expense.
REAL ESTATE
The Husband shall quit claim his interest in the marital residence, located at 34 Commodore Avenue, Shelton, to the Wife subject to the outstanding mortgage which she shall assume and save the Husband harmless from any claims regarding same. Within one year from date, the Wife shall cause the Husband's name to be removed from any liability on the mortgage. In the event she fails to do so within the time required, the CT Page 7518 property shall be immediately listed for sale and sold to the buyer with the first reasonable offer. The court shall retain jurisdiction to supervise the sale including the awarding of any counsel fees and costs incurred by the Husband in the event of the Wife's failure to follow this order.
Further, in the event the mortgage becomes delinquent more than 30 days, the court shall retain jurisdiction to hear any motion filed by the Husband concerning the impact upon his credit. The court shall retain jurisdiction of this issue including the ordering of an immediate sale of the property to protect the Husband from any adverse consequences.
ALIMONY
The Husband shall pay to Wife Alimony in the amount of $475.00 per week pursuant to an immediate wage withholding order.
As additional alimony, the Husband shall pay to the Wife 25% of any income received in excess of his current income ($98,481.84), as and when received. For example, if the Husband receives a bonus of $20,000.00 on February 1, he shall promptly remit to the Wife the sum of $5,000.00. Likewise, if he receives an increase in salary of $100.00 per week, he shall promptly remit to the Wife $25.00 per week retroactive to the date of the increase.
Said alimony shall be payable until the death of either party, the Wife's remarriage or cohabitation as defined in our law, or 10 years from date. In light of her current unemployed status, immediately upon obtaining regular employment, the Wife shall notify the Husband in writing of the name of her employer, the amount of salary being paid, and evidence regarding same. Although alimony shall not be subject to an upward modification, it shall be subject to a downward modification based upon the facts and circumstances at the time including the Wife's income.
PERSONAL PROPERTY
Each party shall retain the motor vehicle in their respective names subject to any obligations concerning same.
Each party shall retain the furniture and personal possessions currently in their control except that the Wife is ordered to return to the Husband his camera equipment, the Iladro figurine, and any portion of his coin and baseball card collection located in the marital residence.
The parties shall equitably divide, within 30 days from date, all photographs taken during the marriage. In the event of a dispute, within CT Page 7519 60 days from date, the matter is referred to the Family Services Unit for mediation. In the event mediation is unsuccessful, within 90 days from date, copies of all disputed photos are to be made at a cost to be equally shared.
Each party shall retain their own savings and checking accounts.
RETIREMENT ASSETS
The Husband shall transfer to the Wife, by rollover to an IRA account to be established by her, one half of his 401k plan without deducting the loan balance which shall remain his sole responsibility. If a Qualified Domestic Relations Order is necessary, the Husband shall have the responsibility for preparing same. In the event the Wife does not establish such an IRA within 30 days from date, she shall be solely responsible for any taxes and penalties incurred by the Husband for the early withdrawal.
The Husband shall transfer to the Wife by Qualified Domestic Relations Order, one half of his Ryder Systems Corp. pension benefit. He shall have the responsibility for the preparation of the QDRO.
The Husband shall transfer to the Wife by Qualified Domestic Relations Order, one half of his accrued ABB, Inc. pension benefit as of this date. The Wife shall have the responsibility for the preparation of the QDRO.
LIABILITIES
The Husband shall be responsible for the following liabilities:
Irwin Opperman $20,100.00 B. R. Simon $10,100.00 L. McGlynn $15,100.00 401k loan $7,000.00 Dr. Horowitz (1/2) $1,477.50 Dr. Horowitz (1/2) $225.00 John Mager (1/2) $6,770.00 Hoffman Oil $705.00 SNET $83.00 Protect (alarm) $254.50 Cutting Edge $291.50 St. Vincents $115.00 Merit Orthopedic $137.92 Dr. Ningrone $70.00 Dr. Lutzker $200.00 CT Page 7520 Dr. Natkin $1,122.00 Dr. Pomeraniecz $60.00 Dr. Israel $525.00 Dr. Russo $200.00 J.P. Auto $501.36 Firstar Mastercard $1,538.00 Firstar Visa $2,325.00 ATT Mastercard $1,600.00
Total $70,500.78
The Wife shall be responsible for the following liabilities:
 Dr. Horowitz (1/2) $1,477.00 Dr. Horowitz (1/2) $225.00 John Mager (1/2) $6,770.00 Carol Pulice $720.00 Filenes $200.00 Bess Evangelos $1,675.00 Personal loans $14,650.00 Universal Card $2,400.00 World Gym $299.00
Total $28,416.50
COUNSEL FEES
Each party shall be responsible for their own counsel fees and any other costs associated with this litigation.
Each party shall be equally responsible for the payment of the balance due the Guardian ad Litem and for any fees charged by him for future services rendered. The entire IRS refund held by the Husband's counsel shall be immediately applied to said balance and the remainder paid in full within 120 days from date. No payments are to be made to either counsel for the parties for legal fees in connection with this action, until the Guardian ad Litem's fees are paid in full.
TAXES
By April 15 of each year, until there is no longer any financial obligation for child support or alimony, the parties shall exchange their complete IRS returns in order to determine that the payments are appropriate under the circumstances then existing.
The Husband shall be entitled to the dependency exemptions for the minor children so long as the Wife is not regularly employed. When the Wife does become employed, this order shall be subject to modification. CT Page 7521
The parties shall equally share the deductions for taxes and interest concerning the marital residence on their 2001 IRS tax returns.
MISCELLANEOUS
Each party shall sign any necessary documents to effectuate the orders contained herein.
All pendente lite orders are to be made current to this date.
Plaintiff's counsel shall prepare the judgment file, have it certified by defendant's counsel, and file it with the court within 30 days.
CUTSUMPAS, J.